## No. 27999

### The People of the State of Colorado v. Eugene Velarde

(586 P.2d 6)

Decided September 5, 1978. Rehearing denied September 25, 1978.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, David Schwartz, Assistant, Appellate Section, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Michael L. Bender, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The defendant was convicted by a jury of aggravated robbery and conspiracy to commit aggravated robbery. On appeal, the defendant alleges that the trial court erred in (1) admitting a memorandum under the past recollection recorded exception to the hearsay rule; (2) permitting the prosecution to impeach the defendant with a prior inconsistent statement obtained in violation of his *Miranda* rights;[1] and (3) permitting the prosecution to impeach the defendant with his prior felony convictions.

I.

At approximately 11:00 a.m. on March 20, 1976, Patrick Murphy entered the White Store in Denver armed with an automatic pistol. Murphy ordered everyone to lie on the floor while he collected several money bags and cash from the store safe. He then ran from the store to a yellow Ford Mustang in which an accomplice was waiting.

A customer who had exited the store when the robbery began took down the license number of the getaway car and relayed that information to the police. The details of the crime and a description of the excape car were immediately broadcast over the police radio. A car matching the description of the excape car was stopped and the occupants fled on foot. After a short chase, the defendant was apprehended.

II.

Prosecution witness Henry Lauridsen testified that he had been in the White Store prior to the robbery. When he saw that a robbery was in progress, he left the store to notify the police. Soon thereafter, the robber exited the store and ran to a yellow Ford Mustang. Lauridsen followed the suspect and took down the car's license number. He subsequently relayed the license number to the police and to Dean O. Ortiz, the assistant manager of the store. Ortiz wrote the number given him by Lauridsen on a piece of paper which was admitted into evidence at trial.

The defendant contends that Ortiz lacked first-hand knowledge of the license number and, therefore, could not testify as to the accuracy of the number reflected in the memorandum, as required by the past recollection recorded exception to the hearsay rule. We disagree.

 The past recollection recorded exception to the hearsay rule requires that a witness be able to (1) identify the memorandum, (2) adequately recall the making of it at or near the time of the event, either as recorded by himself or another, and (3) testify to its accuracy. *Reed v. People,* 174 Colo. 43, 482 P.2d 110 (1971); *Jordan v. People,* 151 Colo. 133, 376 P.2d 699 (1962), *cert. denied,* 373 U.S. 944, 83 S.Ct. 1553, 10

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

L.Ed.2d 699 (1963). A memorandum which is the product of two or more persons is admissible under the exception if each is available and testifies as to his role in the preparation of the memorandum. *United States v. Booz,* 451 F.2d 719, 725 (3d Cir. 1971), *cert. denied,* 414 U.S. 820, 94 S.Ct. 45, 38 L.Ed.2d 52 (1974); *Swart v. United States,* 394 F.2d 5 (9th Cir. 1968).

In *United States v. Booz, supra,* the court considered the question before this court and concluded:

"Some courts and textwriters have taken the view that where as here, a record is the joint product of two individuals, one who makes an oral statement and one who embodies it in a writing, if both parties are available to testify at trial as to the accuracy with which each performed his role, the recollection may be admitted. *See e.g.,* Swart v. United States, 394 F.2d 5 (9th Cir. 1968); 3 *Wigmore,* Evidence § 751, *supra;* Morgan, The Relation Between Hearsay and Preserved Memory, 40 Harv.L.Rev. 712, 720 (1927). We think such an exception to the hearsay rule is sound and adopt it here. If Agent Bass can verify the accuracy of his transcription and if Kulp can testify he related an accurate recollection of the number to Agent Bass, we believe that . . . sufficient indicia of its accuracy exist to let the evidence go to the jury."

■ Both persons involved in the preparation of the license number memorandum in this case testified at trial as to their respective roles. The record indicates that each could testify to the accuracy of his own participation. Moreover, both were subject to the rigors of cross-examination through which defense counsel could expose any and all matters affecting the accuracy or general credibility of the witnesses. No error resulted from admission of the memorandum.

### III.

The defendant took the stand in his own behalf at trial and testified that he met the co-defendant, Murphy, for the first time in jail at the time of his arrest. On cross-examination, the defendant denied having told a police officer that he had known Murphy a long time and, in fact, had grown up with him. On rebuttal, the prosecution called a police officer who testified that the defendant had told him in the course of a conversation that he had grown up with Murphy.

The trial court's decision to permit the prosecution to use the defendant's prior inconsistent statement for impeachment purposes is asserted to be error. The defendant contends that his statement cannot constitutionally be used against him because it was made after he had been charged, while free on bond, and in the absence of a *Miranda* advisement.

■ Every defendant has the right to testify, but the right and privilege which he is granted does not include the right to commit perjury. *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Voluntary statements obtained in violation of a defendant's *Miranda*

rights, although inadmissible in the prosecution's case-in-chief, are admissible for impeachment purposes if the defendant testifies in a manner inconsistent with his prior statements. The shield of *Miranda* cannot be used as a license to commit perjury and avoid confrontation with prior inconsistent utterances. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *People v. Pearson,* 190 Colo. 313, 546 P.2d 1259 (1976).

## IV.

The final allegation of error concerns the trial court's decision to permit the prosecution to use the defendant's 1962 and 1976 burglary convictions for impeachment purposes. The defendant contends that section 13-90-101, C.R.S. 1973, vests discretion in the trial court to deny the use of prior convictions for impeachment purposes and that use of convictions more than five years old violates equal protection guarantees. The defense argument has not caused us to reverse our previous position.

We have previously considered and rejected both contentions advanced by the defendant. Trial courts do not have discretion under the Colorado statute to preclude the use of a defendant's prior felony convictions for impeachment purposes. *People v. Hubbard,* 184 Colo. 225, 519 P.2d 951 (1974); *Candelaria v. People,* 177 Colo. 136, 493 P.2d 355 (1972); *Diaz v. People,* 161 Colo. 172, 420 P.2d 824 (1966). Additionally, section 13-90-101 does not create a suspect classification or violate rights guaranteed under the Equal Protection Clause of the United States Constitution. *U.S. Const.,* Amend. XIV. *People v. Yeager,* 182 Colo. 397, 513 P.2d 1057 (1973); *Lee v. People,* 170 Colo. 268, 460 P.2d 796 (1969).

Accordingly, the judgment is affirmed.

MR. JUSTICE CARRIGAN concurs in all portions of the Court's opinion except Part IV as to which he respectfully dissents.