**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Janice HALL, Defendant–Appellant.**

No. 00CA0845.

Colorado Court of Appeals, Div. I.

April 11, 2002.

Rehearing Denied July 25, 2002.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Firm of Richard A. Hostetler, Richard A. Hostetler, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Janice Hall, appeals the judgment of conviction entered on a jury verdict finding her guilty of first degree murder after deliberation. Defendant's primary contention on appeal is that the trial court erred in refusing to instruct the jury that before she could be convicted, all jurors had to agree unanimously which of the prosecution's alternative theories supported the first degree murder count. Because we conclude the trial court did not err, we affirm.

Defendant's husband (the victim) was shot and killed while he and defendant were on a hunting trip. A witness, who is a deputy sheriff from another state, was camped nearby and heard several gunshots. About thirty minutes later, he saw defendant walking back to her campsite, and the witness noticed shortly afterwards that defendant had changed clothes.

Defendant and the witness then had a conversation during which she denied hearing shots. She stated that her husband had not returned on time and that she was going to look for him. A few minutes later, the witness heard her calling for help. He found her next to the victim's body, waving the

victim's orange hunting vest and throwing empty bullet shells near the body.

Investigators later discovered a shoe print in the mud near the suspected location of the shooter. The print was consistent with defendant's boots. The investigation further showed: (1) defendant's ex-husband had been hunting nearby; (2) he owned the same type of rifle identified as the murder weapon; (3) he had reported it stolen after the hunting trip; (4) defendant had urged the victim to put money in her ex-husband's bank account to benefit their children; (5) defendant was a skilled hunter and had extensive experience with guns; (6) she and the victim had been married for only three months at the time of his death; (7) she had encouraged him to name her as the primary beneficiary of his life insurance policies; and (8) upon his death, she was to receive over $450,000 in death benefits and assets from his estate.

Approximately three years after the victim's death, defendant was charged with first degree murder after deliberation. At the jury trial, the prosecution maintained that defendant either had fired the shot that killed the victim or had aided and abetted her ex-husband in killing him.

At the close of the evidence, the trial court submitted those alternative theories to the jury and instructed the jury, as relevant here, it had to find each element of first degree murder was proven beyond a reasonable doubt and the verdict had to be unanimous. However, the court refused defendant's request that the jury also be instructed that before she could be convicted, all jurors had to agree unanimously which of the prosecution's alternative theories supported the first degree murder count.

## I. Unanimous Verdict

For several reasons, defendant contends the trial court erred in refusing to instruct the jury it was required to reach a unanimous decision whether she was being convicted of first degree murder as the principal or as a complicitor. We reject each of her arguments.

### A. Complicity Theory

■ Defendant first asserts that there is a distinction "between [using] alternative methods or means of committing [first degree murder] and [using] alternative theories of defendant's status as a party to the offense." According to defendant, a unanimity instruction was required because complicity is "a definitional distinction pertaining to a party's status in committing the offense," rather than an alternative method of committing an offense. We are not persuaded.

Prior Colorado decisions have described complicity as another means or theory of law of committing a single offense. *Bogdanov v. People*, 941 P.2d 247 (Colo.1997); *People v. Fisher*, 9 P.3d 1189 (Colo.App.2000); *People v. Thurman*, 948 P.2d 69 (Colo.App.1997); *see also James v. People*, 727 P.2d 850 (Colo. 1986).

As relevant here, "[a] person commits the crime of murder in the first degree if ... [a]fter deliberation and with the intent to cause the death of a person other than himself [or herself], he [or she] causes the death of that person or of another person." Section 18–3–102(1)(a), C.R.S.2001.

To commit first degree murder after deliberation as a principal, one actually has to commit the act resulting in the death of another person. However, one also may be held accountable as a complicitor under § 18–1–601, C.R.S.2001, which provides that "[a] person is guilty of an offense if it is committed by the behavior of another person for which he [or she] is legally accountable as provided in sections 18–1–602 to 18–1–607."

Under § 18–1–603, C.R.S.2001, "[a] person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense."

In view of these statutes and decisions defining complicity, we conclude the trial court did not err in permitting the prosecution to present evidence that defendant committed first degree murder after deliberation either as a complicitor or as a principal.

Those alternative legal theories were two means of committing a single offense, and were not an impermissible "definitional distinction pertaining to a party's status," as defendant asserts. *See Bogdanov v. People, supra; James v. People, supra; People v. Thurman, supra.*

## B. Federal Right to Due Process

■ Defendant next contends her right to due process under the United States Constitution was denied because the trial court did not instruct the jury it had to determine unanimously whether she had committed the murder as the principal or as a complicitor. We disagree.

The United States Supreme Court is the final interpreter of the United States Constitution. *See Lujan v. Colorado State Board of Education,* 649 P.2d 1005 (Colo.1982); *People v. Geisendorfer,* 991 P.2d 308 (Colo. App.1999).

■ Under the Due Process Clause of the United States Constitution, a defendant does not have the right to a unanimous jury verdict in state criminal prosecutions. *Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972). The Supreme Court has stated that even if it is assumed such a right exists, due process does not require unanimity on the various means or theories of committing the single offense charged. *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

In *Schad,* the defendant was charged in Arizona with one count of first degree murder. The prosecution advanced two theories of how the defendant had committed the offense: premeditated murder and felony murder. Arizona law considered those theories to be equivalent means of committing first degree murder. The jury was instructed on both theories as well as on the requirement that it reach a unanimous verdict.

There, as here, the defendant contended due process was denied because the jury verdict may not have been unanimous as to the theory underlying the defendant's guilt of first degree murder. However, a plurality of the Supreme Court rejected the argument, concluding the defendant was not denied his right to due process when the jury was instructed it could reach a unanimous verdict on first degree murder without being unanimous on the theory underlying the charged offense. The Court stated: "We see no reason ... why the rule that the jury need not agree as to mere means of satisfying the *actus reus* element of an offense should not apply equally to alternative means of satisfying the element of *mens rea.*" *Schad v. Arizona, supra,* 501 U.S. at 632, 111 S.Ct. at 2497, 115 L.Ed.2d at 565.

Accordingly, we reject defendant's contention that her right to due process under the United States Constitution was denied because the trial court did not instruct the jury it had to determine unanimously whether she had committed the murder as the principal or as a complicitor. The jury was only required to reach a unanimous verdict on the charge of first degree murder, not as to the alternative theories offered in support of the charge. *See Schad v. Arizona, supra.*

## C. Colorado Right to Due Process

■ Defendant next contends the failure to require unanimity regarding her culpability as a principal or as a complicitor deprived her of her right to due process under the Colorado Constitution, which requires proof beyond a reasonable doubt of every element of a crime. Again, we disagree.

Colo. Const. art. II, § 25 states: "No person shall be deprived of life, liberty or property, without due process of law."

Defendant urges us to adopt the dissenting view in *Schad v. Arizona, supra,* and construe the due process clause of the Colorado Constitution to require unanimity on every act underlying an element of a crime. The dissent in *Schad* would have required unanimity on either premeditated murder or felony murder and not just on the underlying offense of first degree murder. It relied on the rule that due process requires proof beyond a reasonable doubt of every fact necessary to constitute the offense charged. The dissent reasoned that the alternative theories required different courses of conduct, thus demanding proof of different facts in support of each theory. *Schad v. Arizona, supra,*

501 U.S. at 653, 111 S.Ct. at 2508, 115 L.Ed.2d at 579 (White, J., dissenting) ("[W]hile these two paths both lead to a conviction for first-degree murder, they do so by divergent routes possessing no elements in common except the fact of a murder.").

On a few occasions, the Colorado Supreme Court has extended rights protected under the state constitution beyond those protected by the federal constitution. *See People ex rel. Juhan v. District Court,* 165 Colo. 253, 439 P.2d 741 (1968) (recognizing more extensive due process right regarding burden of proof under Colorado Constitution than under federal constitution); *People in Interest of A.C.,* 991 P.2d 304, 307 (Colo.App.1999) ("[E]xtending rights protected under our state constitution beyond those protected by the federal constitution has been largely within the domain of the supreme court."), *aff'd,* 16 P.3d 240 (Colo.2001). However, we perceive no basis for doing so here.

In *Thomas v. People,* 803 P.2d 144 (Colo. 1990), the court considered whether the defendant's right to due process was violated by the trial court's refusal to require the prosecution to designate the acts that formed the basis of the charged offense. There, the defendant was charged with and convicted of two counts of sexual assault on a child. Each count related to a different victim, and the two victims testified to multiple sexual contacts by the defendant over a period of several years. The trial court denied the defendant's request that the prosecution be required to elect the acts on which it was relying as the basis for the charged offense. The trial court also refused the defendant's request to instruct the jury it had to agree unanimously on one or all of the acts to which the victims testified.

On appeal, the supreme court concluded that the trial court had violated the defendant's due process rights in failing to instruct the jury regarding the need for unanimity as to one or all of the acts, but that the error was harmless beyond a reasonable doubt because the jury verdicts reflected unanimity. The court explained that the trial court had required the prosecution to elect a particular type of act as to each victim, that the evidence suggested the sexual contacts were repeated over many years, that the defense theory was a general denial that any of the acts had occurred, and that "[t]he evidence presented no rational basis for some jurors to predicate guilt on one act while other jurors based it on another." *Thomas v. People, supra,* 803 P.2d at 155.

The *Thomas* court further stated:

[W]hen the evidence does not present a reasonable likelihood that jurors may disagree on which acts the defendant committed, the prosecution need not designate a particular instance. If the prosecutor decides not to designate a particular instance, the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged. Necessarily, the determination whether there is a reasonable likelihood that jurors may disagree on which acts the defendant committed requires the exercise of discretion by the trial court. In some instances, special verdicts may be advisable to provide assurance that a verdict is supported by unanimous jury agreement.

*Thomas v. People, supra,* 803 P.2d at 153–54 (footnote omitted).

Other decisions have held the jury must be unanimous only as to the elements of the crime charged, even though the evidence demonstrated that various acts by the defendant could have established those elements under different theories of culpability. *See James v. People, supra; People v. Lawrence,* 55 P.3d 155 (Colo.App.2001); *People v. Thurman, supra; People v. Lewis,* 710 P.2d 1110 (Colo.App.1985). Those cases have held a jury may return a general verdict of guilty when the trial court instructs on alternative theories or means of committing the crime.

In *James v. People, supra,* the defendant was charged with one count of first degree sexual assault. However, the prosecution presented three different methods or theories by which the defendant may have com-

mitted that offense. Further, the jury was instructed it could convict the defendant "if he had knowingly inflicted sexual penetration upon the victim by causing her to submit to him in one of three ways: (1) application of physical force or violence, (2) threat of imminent death, or (3) threat of future retaliation." *James v. People, supra*, 727 P.2d at 853.

The three theories each required distinct acts that constituted the same crime, and the jury's verdict was returned on a general verdict form that did not specify upon which of the alternatives the verdict was reached.

On appeal, the defendant contended his due process rights were violated because the court was unable to determine upon which of the three theories the jurors based their verdict. The defendant claimed the evidence "was insufficient to justify a finding by the jury that every element of each alternative method of committing the charged offense had been proven beyond a reasonable doubt." *James v. People, supra*, 727 P.2d at 852. Thus, the issue on appeal was "whether each alternative [theory] must be supported by proof sufficient to permit a jury to find the defendant guilty beyond a reasonable doubt." *James v. People, supra*, 727 P.2d at 854–55.

The supreme court concluded the jury could return a general verdict of guilty on a single count alleged to have occurred under alternative theories without depriving the defendant of the right to a unanimous verdict. However, each theory presented had to be supported by sufficient evidence. If there were insufficient evidence of any alternative theory, the general verdict had to be set aside. *James v. People, supra*.

■ In summary, the defendant's right to due process is violated if: (1) the prosecution alleges multiple acts that could constitute the charged offense; (2) only one theory of culpability is presented; and (3) no modified unanimity instruction is given. Nevertheless, the failure to give such a unanimity instruction may be harmless beyond a reasonable doubt if the reviewing court is convinced the jury verdicts reflect unanimous agreement. *See Thomas v. People, supra*.

■ Further, where the jurors unanimously agree the defendant committed the charged crime, unanimity is not required as to the underlying acts, as long as the prosecution presents alternative theories and each theory is supported by sufficient evidence. *See James v. People, supra*.

In light of these decisions by the Colorado Supreme Court, we reject defendant's contention that we should adopt the reasoning of the dissent in *Schad v. Arizona, supra*.

*People v. Thurman, supra*, offers additional guidance in resolving the issue before us. There, as here, the defendant maintained that the trial court erred in allowing the jury to return a general verdict of guilty when it was instructed on the prosecution's alternate theories: that the defendant was guilty either as a principal or as a complicitor. There, as here, the trial court also did not require the prosecution to elect which theory it was submitting to the jury, nor was the jury given a modified unanimity instruction requiring agreement on one theory or the other. *People v. Thurman, supra*.

The panel in *Thurman* rejected the defendant's challenge to the general verdict of guilty, concluding that "when a defendant is charged with alternative means of committing the same offense within a single count, not with two distinct offenses in separate counts, and evidence is presented regarding a single transaction, the prosecution is not required to select a single alternative." *People v. Thurman, supra*, 948 P.2d at 71.

Although *Thurman* did not address whether the failure to require unanimity on the particular theory of defendant's participation in the offense was a violation of due process, the panel applied essentially the same rule established in *James*. Thus, the holding of *Thurman* supports our conclusion that a modified unanimity instruction was not required under the present circumstances.

Because the jury was instructed it could convict defendant as a principal or as a complicitor and was given a general verdict form, individual jurors could have convicted defendant based on differing theories. However, the jury was also instructed that every element of the offense had to be proved beyond

a reasonable doubt before a verdict of guilty could be returned and that it was required to reach a unanimous verdict. Defendant has not challenged the sufficiency of the evidence supporting either theory, and as long as the prosecution presented sufficient evidence to support both theories, we must uphold the conviction as being supported by proof beyond a reasonable doubt. *See James v. People, supra.*

Our conclusion that a modified unanimity instruction was not required here is further supported by the decisions of courts in other jurisdictions that have addressed similar issues. *See People v. Sutherland,* 17 Cal. App.4th 602, 617, 21 Cal.Rptr.2d 752, 761 (1993)("[N]o unanimity instruction is required to prevent a less than unanimous verdict where the evidence independently proves acts which support the defendant's liability either as a principal or as an aider and abettor."); *People v. Smielewski,* 235 Mich.App. 196, 596 N.W.2d 636 (1999)(jury may return a general verdict of guilty when instructed on both theories of principal liability and aiding and abetting); *Evans v. State,* 113 Nev. 885, 944 P.2d 253 (1997)(no error occurred when jury was presented with theories of premeditated murder, felony murder, and aiding and abetting without requiring unanimity on one particular theory); *Holland v. State,* 91 Wis.2d 134, 280 N.W.2d 288, 292–93 (1979)("Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed.").

In each of the cited cases, the court concluded the jury may return a general verdict of guilty when instructed on theories of both principal and complicitor culpability.

We therefore conclude that while due process requires a unanimous verdict under certain circumstances, those circumstances are not present here. The unanimity and reasonable doubt instructions given here were proper, and a modified unanimity instruction was not required. Accordingly, defendant's constitutional right to due process was not violated.

## D. Colorado Right to a Jury Trial

■ Defendant next contends the failure to require unanimity regarding her culpability as the principal or as a complicitor violated her right to a jury trial under Colo. Const. art. II, § 23. She urges us to construe that section to include the right to a unanimous verdict. We are not persuaded.

Colo. Const. art. II, § 23 provides in relevant part: "The right of trial by jury shall remain inviolate in criminal cases. . . ."

There is a statutory right to a unanimous verdict in Colorado. *See* §§ 16–10–108, 18–1–406(1), C.R.S.2001 (requiring unanimous jury verdicts); *see also* Crim. P. 23(a)(8). However, the Colorado Constitution does not explicitly guarantee the right to a unanimous jury verdict. Although due process requires a unanimous verdict under certain circumstances, as discussed above, no Colorado cases have explicitly held that the Colorado Constitution includes such a right.

Defendant nonetheless argues that because the Colorado Constitution was based largely on the Illinois Constitution, we should adopt Illinois decisions construing its constitution to include the right to a unanimous jury verdict. We are not persuaded.

The 1870 Illinois Constitution was in effect at the time our constitution was ratified. The language in the 1870 Illinois Constitution, which is currently contained in Ill. Const. art. I, § 13, provides that as to criminal defendants, "the right of trial by jury *as heretofore enjoyed* shall remain inviolate." (emphasis added).

The Illinois Supreme Court has held "[t]he right protected by [each of the Illinois Constitutions of 1818, 1848, and 1870] was the right of trial by jury as it existed at common law," and at common law, the right to a jury trial included the right to a unanimous verdict. *George v. People,* 167 Ill. 447, 455–57, 47 N.E. 741, 743–44 (1897); *see also People v. Strain,* 194 Ill.2d 467, 252 Ill.Dec. 65, 742 N.E.2d 315 (2000)(Illinois Constitution includes the right to a unanimous jury verdict).

Unlike the Illinois Constitution, Colo. Const. art. II, § 23, the right to jury trial provision, is not qualified by the "as hereto-

fore enjoyed" language. We acknowledge the Illinois Constitution of 1818 stated "that the right of trial by jury shall remain inviolate," which is identical to language contained in the Colorado Constitution. We further acknowledge the Illinois Supreme Court, in *George v. People, supra,* 167 Ill. at 455, 47 N.E. at 743, did not find "any substantial difference between the provisions" in the Illinois constitutions of 1818, which did not contain the "as heretofore enjoyed" language, and that of 1870, which did contain such language.

Nevertheless, we view it as significant that the framers of our state constitution omitted the "as heretofore enjoyed" language contained in the Illinois Constitution. *See Ace Flying Service, Inc. v. Colorado Department of Agriculture,* 136 Colo. 19, 314 P.2d 278 (1957)(Moore, C.J., specially concurring)(provisions in the Colorado Constitution that deviate from the Illinois Constitution must be regarded as indicating an intention to depart from the interpretations of the Illinois provision).

If that language had been included, it would have required that we look to and incorporate within our constitution the common law right to a unanimous verdict. However, in view of the difference in the language of the Colorado and Illinois constitutions, we are not persuaded by defendant's argument that we should apply Illinois law and construe the Colorado Constitution to include a right that is not included in the text and that the Colorado Supreme Court has not yet recognized.

We therefore conclude defendant was not deprived of her rights under Colo. Const. art. II, § 23.

In so holding, we observe that in some of the above-cited cases in which the court has held the jury may return a general verdict of guilty when instructed on theories of both principal and complicitor culpability, the state constitution has provided the defendant in a criminal case the right to a unanimous jury verdict. *See People v. Sutherland, supra.*

## II. Mental State Evidence

■ We also reject defendant's contention that the trial court abused its discretion in allowing testimony that she had suffered from multiple personality disorder, but was not suffering from it at the time of the murder.

■ A trial court's admission of evidence will not be overturned unless it abused its discretion. *People v. Mossmann,* 17 P.3d 165 (Colo.App.2000). Under this standard, we will not overturn the trial court's evidentiary ruling unless it was manifestly arbitrary, unreasonable, or unfair. *People v. Melillo,* 25 P.3d 769 (Colo.2001).

CRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 402 requires that evidence be relevant before the trial court may admit it. *People v. Mossmann, supra.*

As pertinent here, under CRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

CRE 404(a) provides in relevant part:

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except: (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same . . . .

CRE 404(b) provides in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

After the homicide was committed in this case, the police conducted an office interview with defendant. She reported that during a flashback, she had seen the victim being shot four times. The officer then asked defendant whether she had ever suffered from multiple personality disorder. She said she had, but she claimed to have been cured by the time of the murder.

At trial, defendant contended such evidence was irrelevant because she had not

raised the issue of diminished mental capacity and also was "improper bad character evidence." However, the prosecution's theory was that defendant gave a number of false and inconsistent statements to law enforcement officials after the homicide and that her purpose in mentioning her alleged multiple personality disorder was to explain why her statements had been inconsistent. The trial court concluded the testimony was relevant and admitted it.

We disagree that because defendant failed to raise the issue of diminished mental capacity, this evidence was irrelevant. Defendant's statement to the officer regarding her multiple personality disorder had probative value, given the prosecution's theory that defendant had covered up her involvement in the crime, and her own description of her mental state at the time of the offense made it more probable that she had intentionally caused the death of the victim. The statement was thus relevant to show defendant had committed first degree murder as a principal, which requires specific intent and deliberation.

Nor do we agree with defendant that the danger of unfair prejudice substantially outweighed the probative value of the evidence. This particular evidence constituted a very brief part of a fifteen-day trial, and only the officer who elicited the statement from defendant concerning her multiple personality disorder testified about the issue. Thus, while the relevance of the evidence may not have been great, we perceive no abuse of discretion by the trial court in allowing the officer's testimony.

Finally, we observe that CRE 404(b) only applies to "[e]vidence of crimes, wrongs, or acts." The evidence of multiple personality disorder related to defendant's mental state at the time of the murder, not to any of her actions. Thus, we conclude CRE 404(b) does not apply to this evidence.

Judgment affirmed.

Judge METZGER and Judge KAPELKE concur.